# EXHIBIT 1

## FUNDED MULTI-LINE DEDUCTIBLE PROGRAM AGREEMENT
(hereinafter this Agreement)

effective the 15th day of March, 2005,

by
ACE American Insurance Company

(hereinafter, the Company)

and

~~Sasson Hallier Properties, LLC (Phase II)~~ Panorama Towers II, LLC

(hereinafter the Insured)

**WHEREAS,** this Agreement encompasses all the policy(ies) of general liability, and/or workers' compensation insurance listed on the respective Addenda hereto (including Addenda that may be added after the effective date hereof) issued by the Company (which together with all extensions thereof and endorsements thereto, are hereinafter collectively referred to as the Policies or as the General Liability Policies, and Workers Compensation Policies, respectively), which Policies each include a Deductible Endorsement; and

**WHEREAS,** the Company is willing to issue such Policies only if the Insured provides a fund for the payment of losses and collateral security to the Company; and

**NOW, THEREFORE,** in consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in accordance with the terms and conditions of the Policies, the Company and the Insured agree as follows:

### ARTICLE I

**INSUREDS PAYMENTS**

The Insured agrees to pay or reimburse the Company for the following amounts as they become due:

1) All premiums payable to the Company in accordance with the terms of the Workers Compensation and General Liability Deductible Policies, including any audit of the Policies and recalculation of the deductible premium as provided therein, as described in greater detail in the respective Addenda hereto;

2) All Paid Losses within the respective deductibles as provided in the Workers Compensation and General Liability Deductible Policies, funded through payments to the Deductible Reimbursement Fund;

3) Allocated Loss Adjustment Expense funded through payments to the Deductible Reimbursement Fund, with respect to claims under the Workers Compensation and General Liability Deductible Policies as provided in the respective Addenda hereto;

4) All amounts the Insured is or may be obligated to pay to other parties related to the Workers

Compensation and General Liability Deductible Policies, but which are paid by the Company;

and to secure its obligation to make such payments with collateral security as provided in Article IV of this Agreement

The Company will bill the Insured for Company Expenses, Claims Administration Expense, General Liability Premium and payments to the Deductible Reimbursement Fund as provided in this Agreement and in the respective addenda hereto. The Insured's payment of each such bill shall be due and payable no later than the Required Payment Date. The Company will also debit the Deductible Reimbursement Fund monthly for the Insured's share of Paid Losses and Allocated Loss Adjustment Expense related to claims under the Workers Compensation and General Liability Deductible Policies, as they are paid by the Company.

## GENERAL PROVISIONS

If the Insured does not pay an amount billed by the Required Payment Date:

A. the Company shall have the right to bill the Insured for, and to collect, the Interest Charge applied to any such unpaid amount; and

B. the Company shall have the right to increase the required amount of any Deductible Reimbursement Fund to an amount determined by the Company, which amount may exceed the required amount as specified in Article III of this Agreement.

All terms and conditions of each Addendum hereto are a part of this Agreement and are herein incorporated by reference in their entirety.

The Insured and the Company agree that this Agreement is not intended to, and does not, amend or alter any of the terms and conditions of any of the Policies. In the event of any inconsistencies between this Agreement and any Policy, the terms and conditions of the Policy shall control.

## ARTICLE II

## DEFINITIONS

"Allocated Loss Adjustment Expense" shall mean such claim expenses, costs and any interest incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or lawsuit that the Company, under its respective accounting practices, directly allocates to a particular claim, whether or not a payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to, subrogation, all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of depositions and court reporters or recorded statements, provided, however, that Allocated Loss Adjustment Expense shall not include the salaries and traveling expenses of the Company's employees (except for amounts allocated to a specific claim by any of the Company's Field Litigation Offices or Legal Services Offices), or the Company's overhead and adjusters' fees.

"Claim Administration Expense" shall mean the amounts the Company determines are needed to cover expenses of administering claims under the Policies, other than those fees related to recovery services.

"Company Expenses" shall mean that amount the Company determines it needs to cover its expenses to administer the Insured's casualty insurance program pursuant to the Policies, including but not limited to the following:

    a.   general and administrative expense;

    b.   insurance charges;

    c.   premium taxes;

    d.   variable expenses, including but not limited to residual market assessments, boards and bureaus, non-subject state surcharges and assessments and other related fees; and

    e.   other services provided by the Company.

"Deductible Premium" shall mean the premium after the application of the deductible credit factor, as shown on the Workers' Compensation Deductible Policies.

"Deductible Reimbursement Fund" shall mean the amounts paid and payable by the Insured to the Company pursuant to Article III of this Agreement, and shall be in an amount equal to the Company's estimate (as adjusted from time to time as provided herein) of the Insured's Obligations under this Agreement.

"Insured's Obligation" shall mean all amounts that the Insured is or may in the future be required to pay or reimburse pursuant to this Agreement or the Policies. In calculating the amount of the Insured's Obligation, the Company will include the Insured's Ultimate Losses, and will credit the Insured for any Reimbursement Fund Income Amount.

"Interest Charge" shall mean the amount of interest for which the Insured is liable to the Company, payable at the monthly rate of one and one-half percent (1.5%) (or, if such rate is impermissible under applicable law, the maximum lawful, non-usurious rate that may be charged) on any amount payable by the Insured to the Company under this Agreement, but not paid by the Insured by the Required Payment Date, said charge to commence on the day next following the Required Payment Date for any such unpaid amount.

"Paid Losses" shall mean all amounts paid for losses (exclusive of Allocated Loss Adjustment Expense) under the Policies; provided, however, that the amount payable or reimbursable by the Insured for each Paid Loss shall be subject to the amount of the deductible as provided in the respective Policies.

"Project" shall mean the properties located at 4631 S. Industrial Road and 4577 Industrial Road, Las Vegas, NV 89103. The project completion date is September 15, 2006.

"Reimbursement Fund Income Amount" shall mean the dollar amount so designated in each respective annual Addendum hereto. Each such Reimbursement Fund Income amount will be credited by the Company to the Deductible Reimbursement Fund established pursuant to the corresponding annual Addendum. The Reimbursement Fund Income Amounts set forth in the respective Addenda will remain fixed and will not be adjusted unless any of the Policies is cancelled prior to the expiration date, in which case such amount will be Subject to pro-rata adjustment by the Company.

"Required Payment Date" shall mean a date not later than fifteen (15) calendar days after the date of the Company's invoice for any amount billed by the Company to the Insured under this Agreement.

Sasson Hallier Properties, LLC (Phase II)                3

"Ultimate Losses" shall mean losses incurred under the Policies within the respective deductibles plus future loss development and the amount of losses incurred but not reported, as estimated by the Company. Ultimate Losses may include Allocated Loss Adjustment Expense as estimated by the Company.

## ARTICLE III

### DEDUCTIBLE REIMBURSEMENT FUND AND PAID LOSSES

The Insured will pay the Company the amounts specified as the Cash Pay-In in the Addendum hereto, to fund the Deductible Reimbursement Fund, and the Deductible Reimbursement Fund will be credited by the Company for the Reimbursement Fund Income Amount specified therein.

The total of such payments and such credit pursuant to each respective Addendum shall constitute the Initial Deductible Reimbursement Fund for the Policies listed on such Addendum, and shall be in the amount specified therein as "Initial Deductible Reimbursement Fund". On a periodic basis, the Company will withdraw from each year's Deductible Reimbursement Fund the amount necessary to pay or reimburse the Company for Paid Losses and Allocated Loss Adjustment Expense related to the Policies listed on the Addendum effective for such year.

In the event of any single payment of a large Paid Loss and/or Allocated Loss Adjustment Expense under any Policy in an amount equal to or greater than the amount specified as "Single Payment of Paid Loss and/or Allocated Loss Adjustment Expense" on the Addendum on which such Policy is listed, the Company have the right to require the Insured to pay immediately the amount of such single payment into the Deductible Reimbursement Fund.

The Company shall review and redetermine the required amount of such Deductible Reimbursement Fund at periodic intervals for the Policies listed on such Addendum. After the sixth calendar month of the completion of the Project, and annually thereafter, the Company shall recalculate the amount of the Deductible Reimbursement Fund for the Policies listed on such Addendum. The formula for the recalculation applicable to each Policy is shown in the Addendum applicable to the Policy.

Adjustments in such required amounts will be made promptly by the Insured and the Company.

All payments made by the Insured to the Company pursuant to this Agreement, the Policies, or any Addendum hereto shall be allocated by the Company (i) first to the Deductible Reimbursement Fund for the Policies listed in the Company's respective invoices for such payments, (ii) then to any other Deductible Reimbursement Fund with respect to which any amounts are then due by the Insured to the Company, (iii) then to other amounts other than premiums, owed by the Insured to the Company for any of the Policies, (iv) finally, to payment of outstanding premiums for any of the Policies, regardless of how any such payment is designated by the Insured. If the Insured fails to pay in full any amount as and when due to the Company, the Company may cancel any Policies then in force, subject to the provisions of the Policies and any applicable laws and regulations.

**ARTICLE IV**

**COLLATERAL SECURITY FOR INSURED'S OBLIGATION**

The Insured hereby grants to the Company a continuing security interest in and lien upon each Deductible Reimbursement Fund and all payments made by the Insured to the Company and held by the Company in any Deductible Reimbursement Fund or otherwise as collateral to secure the Insured's Obligation as calculated by the Company. The Insured shall have no claim or interest in the Deductible Reimbursement Fund or any other amounts paid to the Company unless and until the Insured's Obligation shall have been paid and satisfied in full.

The Company shall hold the cash paid by the Insured under Article I as Deductible Reimbursement Funds, and the Company shall have the exclusive right to withdraw monies from the Deductible Reimbursement Funds, on a periodic basis, to pay or reimburse the Company for the Insured's Obligation. The Insured will continue to fund the Deductible Reimbursement Funds in accordance with the terms of this Agreement and the Addenda hereto, until the Company determines, in its discretion, that there is no longer any need for such Deductible Reimbursement Funds.

The Insured agrees that (i) the Company may continue to require, adjust the required amount of, and hold the Deductible Reimbursement Funds as collateral security for the payment of the Insured's Obligation, and (ii) the Insured will continue to fund the Deductible Reimbursement Funds as required by the Company pursuant to the adjustments provided for in Article III of this Agreement, after any cancellation, non-renewal, or replacement of the Policies, and until the Company determines, in it discretion, that it no longer has a need to hold the Deductible Reimbursement Funds.

**ARTICLE V**

**TERMINATION/CANCELLATION OF THE POLICIES**

Cancellation of the Policies or any Policy by either the Insured or the Company will not terminate this Agreement. The parties' rights, duties and obligations under this Agreement will continue after any cancellation, non-renewal or replacement of the Policies. If the Insured cancels any Policy during the Project period, the Initial Deductible Reimbursement Fund amount in the applicable Addendum, will be due and payable to the Company immediately and will be held by the Company as a Deductible Reimbursement Fund, subject to the terms and conditions of this Agreement.

This Agreement shall continue in full force and effect until the Company and the Insured mutually agree that it shall terminate.

**ARTICLE VI**

1.   **Applicable Law.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. No amendments or modification of this Agreement shall have any force or effect unless in writing and signed by the parties hereto.

2.   **Successors and Assigns.** All the terms of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns, whether so expressed or

Sasson Hallier Properties, LLC (Phase II)                    5

not; provided, however, that no party hereto shall assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the other parties hereto.

3.   **Severability.** Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or enforceability without invalidating the remaining provisions and without affecting the validity or enforceability of such provision in any other jurisdiction.

4.   **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute but one and the same instrument.

5.   **Arbitration.** Any controversy, dispute, claim or question arising out of or relating to this Agreement, including without limitation its interpretation, performance or non-performance by any party, or any breach thereof (hereinafter, collectively, "Controversy") shall be referred to and resolved exclusively by three arbitrators through private, confidential arbitration conducted in Philadelphia, PA. Such arbitrators shall be disinterested, neutral individuals who have experience and qualifications in the subject matter of the Controversy. One arbitrator shall be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty (30) days after receipt of written notice from the other party requesting it to do so, the requesting party may choose a total of two arbitrators who shall choose the third. If the arbitrators fail to select the third arbitrator within ten (10) days after both have been named, each arbitrator shall name three candidates, of whom the other shall decline two, and the decision shall be made by drawing lots. In the event of the death, disability or incapacity of any arbitrator, a replacement shall be named pursuant to the process which resulted in the selection of the arbitrator to be replaced. The arbitrators may abstain from following the strict rules of law, and shall make their decision with regard to the custom and usage of the insurance business as at the effective date of this Agreement. The majority decision of the panel shall be final and binding upon the parties to this Agreement. Judgment may be entered upon the award of the arbitrators in any court of competent jurisdiction. Except as otherwise specifically provided in this paragraph, the arbitration of any controversy shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

**IN WITNESS WHEREOF,** this Funded Multi-Line Deductible Program Agreement has been executed by the parties hereto, to be effective on the date first written above.

PANORAMA TOWERS II, LLC

~~Sasson Hallier Properties, LLC (Phase II)~~          ACE American Insurance Company

Name: _____          Name: _____

Title: _Corp. Counsel_          Title: _AVP_   _Greg Kennemer_

Date: _6/20/05_          Date: _7/25/05_

Sasson Hallier Properties, LLC (Phase II)                    6

**ADDENDUM TO**
**FUNDED MULTI-LINE DEDUCTIBLE PROGRAM AGREEMENT**
(the "Addendum")

PANORAMA TOWERS II, LLC

for ~~Sasson Hallier Properties, LLC (Phase II)~~

Effective as of <u>March 15, 2005</u>

The terms and conditions stated in this Addendum apply only to the Policies listed below. All other terms and conditions of the Agreement are here incorporated by reference in their entirety.

**Policy Listing**

| DEDUCTIBLE POLICIES | | | |
|---|---|---|---|
| **Policy Number** | **Policy Period** | **Deductible Limit** | **Issuing Company** |
| G1 85 62 30 3 | 03/15/2005-09/15/2006 | $250,000 | ACE American Insurance Company |
| C4 41 03 37 0<br><br>Including all additional Policies issued by the Company under Producer Code <u>273940</u> providing coverage for the Project as defined herein and as specified in each Policy. | 03/15/2005-2006 | $250,000 | ACE American Insurance Company |

## PAYMENTS

For the Policies listed on this Addendum, the payments provided for in Article I of the Agreement are payable as follows:

### A.  INITIAL WORKERS COMPENSATION PAYMENTS

**1. Initial Company Expenses:** Commencing on the effective date of this Addendum, the Insured will make an initial payment at inception to the Company by the Required Payment Date related to the above listed Workers Compensation Deductible Policies. This payment shall be made in accordance with the Company Expense payment schedule.

**2. Initial Claim Administration Expenses:** Commencing on the effective date of the Addendum, the Insured will make an initial payment at inception to the Company by the Required Payment Date related to the above Policies. This payment shall be made in accordance with the Claims Administration Expense payment schedule.

**3. Initial Policyholder Surcharges:** Commencing on the effective date of this Addendum, the Insured

will make an initial payment of $7,505 to the Company by the Required Payment Date related to the above listed Policies for Policyholder Surcharges.

**4. Initial Deductible Reimbursement Fund:** Commencing on the effective date of the Addendum, the Insured will make an initial payment to the Company by the Required Payment Date related to the above listed Policies to fund the Initial Deductible Reimbursement Fund.

    a. The required amount of the **Initial Deductible Reimbursement Fund** is $1,631,000.

    b. The **Cash Pay-In** to the Initial Deductible Reimbursement Fund will be $1,551,467. This payment will be made in accordance with the Deductible Reimbursement Fund Payment Schedule.

    c. The **Reimbursement Fund Income** to be credited to the Deductible Reimbursement Fund shall be $79,533.

    d. **Single Payment of Paid Loss and/or Allocated Loss Adjustment Expense:** The amount of the Single Payment of Paid Loss and/or Allocated Loss Adjustment Expense that may become payable into the Initial Deductible Reimbursement Fund is $100,000.

## B. RECALCULATION/ADJUSTMENT OF WORKERS COMPENSATION PAYMENTS

1. **Company Expenses Recalculation/Adjustments:** The Company will recalculate and the Insured will pay Company Expenses related to the Policies, as follows:

After the sixth calendar month of the completion of the project and annually thereafter where applicable, the Company will recalculate and the Insured will pay Company Expenses based on the following Components:

    a. General and Administrative Expense: $216,874, minimum and deposit but to be adjusted at the time of the audit adjustment based on a rate of .867 per $100 of payroll. If the project is cancelled for any reason prior to the completion date, the audited adjusted amount shall be no less than the minimum premium; plus

    b. Insurance Charge: $322,301, minimum and deposit but to be adjusted at the time of the audit adjustment based on a rate of 1.289 per $100 of payroll. If the project is cancelled for any reason prior to the completion date, the audited adjusted amount shall be no less than the minimum premium; plus

    c. Premium Tax and Assessment Expense: 7.00% of Deductible Workers Compensation Premium for the state of Nevada.

The Premium Tax and Assessments will be recalculated based on the state distribution of premiums, Applicable state tax rates and any additional tax and/or assessment liability imposed by the states. On or before the renewal anniversary date of each Policy period, the Company may adjust the initial Premium Tax and assessment percentage to reflect changes in the applicable state tax rates and/or assessment rates.

2. **Claim Administration Expense Adjustments:** The amount of the Initial Workers Compensation Claim Administration Expense was computed based upon the Company's estimate of the numbers and types of claims and fees as set forth in the following fee schedule:

| TYPE OF CLAIM | ESTIMATED NUMBER OF CLAIMS | FEE PER CLAIM |
|---|---|---|
| Workers Compensation – Medical Only | 100 | $130 |
| Workers Compensation - Managed Medical Only | 8 | $1,295 |
| Workers Compensation – Indemnity | 38 | $1,295 |

Six months after completion of the project and annually thereafter a claim count reconciliation will be performed by the Company. The actual numbers and types of claims as determined by such reconciliation will be multiplied by the rates set forth above, and the result shall be the total Claims Administration Expense payable by the Insured as of the date of each reconciliation.

If the actual Claims Administration Expense determined pursuant to the first such claim count reconciliation exceeds the amount of the Initial Claims Administration Expense paid to the Company, the Insured will pay the difference to the Company on or before the Required Payment Date. If less, the Company will promptly return to the Insured the difference between the Initial Claim Administration Expense paid to the Company and the actual Claim Administration Expense.

3. **Policyholder Surcharges Adjustments:** Policyholder Surcharges will be adjusted six months after project completion and annually thereafter based on state distribution of premiums and the applicable state non-subject charges.

4. **Deductible Reimbursement Fund Adjustments**

The adjustments shall be calculated according to the following formula:

The Deductible Reimbursement Fund shall be recalculated by the Company at 6 months after Project Completion, and then at intervals of 12 months from and following the first adjustment and each subsequent adjustment.

The required amount of the Deductible Reimbursement Fund shall equal:

> The Program Aggregate as provided in this Addendum,
> Less
> Paid Losses and paid Allocated Loss Adjustment Expense,
> Less Reimbursement Fund Income Amount

## C. <u>GENERAL LIABILITY DEDUCTIBLE POLICIES</u>

**1. General Liability Premium:**  Commencing on the effective date of this Addendum, the Insured will make an annual payment to the Company by the Required Payment Date related to the listed General Liability Policies. This payment shall be made in accordance with the General Liability Premium payment schedule.

**2. Adjustment of General Liability Premium**:  Six months after completion of the project, The Company will recalculate the General Liability Premium as follows:

> General Liability Policy Premium:  $283,811, minimum and to be adjusted  at the time of audit adjustment based on payroll at a rate of 1.135 per $100.  If the project is cancelled for any reason prior to the completion date, the audited earned premium shall be no less than the minimum premium.

## OTHER PROVISIONS

### ALLOCATED LOSS ADJUSTMENT EXPENSE

The Insured shall pay or reimburse the Company for the sum of the amount of each Paid Loss plus related Allocated Loss Adjustment Expense, up to the amount of the applicable Policy's Deductible Limit or Loss Limitation.

### EXCESS OF AGGREGATE COVERAGE

With respect to the Deductible Policies listed on this Addendum only, the total amount payable by the Insured for the Project for Paid Losses within the deductibles provided in the Policies, [excluding] Allocated Loss Adjustment Expense and Claim Administration Expense, shall not exceed the greater of:
>    $1,631,000, or
>    the amount calculated by applying a rate of 6.524 per $100 of payroll to the Insureds audited payroll for the Project, (hereinafter the "Program Aggregate").

### RECOVERY SERVICES

The Company has contracted with Recovery Services International to pursue recoveries for any appropriate claim.  Any related fees will be subtracted from amounts recovered.

**IN WITNESS WHEREOF,** this Addendum to the Funded Multi-line Deductible Program Agreement dated March 15, 2005 has been duly executed by the parties hereto, each of which intends by its execution hereof to be legally bound by the terms of this Addendum and of the Agreement.

PANORAMA TOWERS II, LLC
~~Sasson Hallier Properties, LLC (Phase II)~~                     ACE American Insurance Company

Name: _____                Name: _____  Greg Kennemer

Title: _Corp. Counsel_____                 Title: _AVP_____

Date: _6/28/05_____                 Date: _7/25/05_____

Sasson Hallier Properties, LLC (Phase II)                10

**COMPANY EXPENSE**
**PAYMENT SCHEDULE**

for Sasson Hallier Properties, LLC (Phase II)

Effective March 15, 2005

| Policy Year 03/15/2005-09/15/2006 | |
|---|---|
| 03/15/2005 | $592,124 |

**GENERAL LIABILITY PREMIUM**
**PAYMENT SCHEDULE**

| Policy Year 03/15/2005-09/15/2006 | |
|---|---|
| 03/15/2005 | $283,811 |

**DEDUCTIBLE REIMBURSEMENT FUND**
**PAYMENT SCHEDULE**

| Policy Year 03/15/2005-09/15/2006 | |
|---|---|
| 03/15/2005 | $1,551,467 |

**Claims Administration Expense**
**PAYMENT SCHEDULE**

| Policy Year 03/15/2005-09/15/2006 | |
|---|---|
| 03/15/2005 | $72,570 |